IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARILYN J. HUTTON-FORD,

    Plaintiff,

vs.                              Case No. 05-1212-JTM

THE UNION LABOR LIFE INSURANCE
COMPANY,

    Defendant.

**MEMORANDUM AND ORDER**

This matter comes before the court on the defendant's Motion for Summary Judgment (Dkt. No. 13). Defendant argues that plaintiff's husband made material misrepresentations in his application for term life insurance and thus is not entitled to coverage. Plaintiff disputes whether the misrepresentations were material. After reviewing the parties' arguments, the court finds in favor of defendant.

**I. STANDARD OF REVIEW**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgments as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all of the evidence in a light most favorable to the opposing party. Jurasek v. Utah State Hosp., 158 F.3d 506, 510 (10th Cir. 1998). The party moving for summary judgment must

demonstrate its entitlement to summary judgment beyond a reasonable doubt. Baker v. Board of Regents, 991 F.2d 628, 630 (10th Cir. 1993). The moving party need not disprove the nonmoving party's claim or defense; it need only establish that the factual allegations have no legal significance. Dayton Hudson Corp. v. Macerich Real Estate Co., 812 F.2d 1319, 1323 (10th Cir. 1987).

The party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in Matsushita). The opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the opposing party must present significant admissible probative evidence supporting that party's allegations. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

## II. FINDINGS OF FACT

Union Labor Life is a life insurance company doing business in the State of Kansas. On or about June 26, 2003, Stanley M. Ford entered into a contract for group term life insurance coverage through defendant Union Labor Life. As a result of Mr. Ford's application, a Group Certificate of Term Life Insurance was issued evidencing his coverage. That Certificate included the application form he completed on May 25, 2003, as an attachment thereto.

The application through defendant United Labor Life contained the following questions, to which Mr. Ford provided the answers noted below:

> 1. In the past 7 years, has any member of the medical profession diagnosed you with or treated you for: any disease or disorder of the heart, blood, lungs, liver, kidneys; AIDS or tested Positive for HIV; any mental, nervous, circulatory,

    digestive or immune disorder; high blood pressure, stroke, hepatitis, cancer or tumor, diabetes, drug or alcohol abuse?

        ____Yes      __X__No

       *  *  *  *

    3. Other than those conditions covered in Question 1, during the last three years have you had an examination that was caused by an illness, injury, or abnormal physical condition, or follow-up of a diagnosed condition?

        ____Yes      __X__No

       *  *  *  *

    I understand and affirm by my signature below that, to the best of my knowledge and belief, the information in this entire application is true and complete. I understand that a separate Certificate will be issued to each applicant and that no insurance is in effect until I am issued my Certificate and my first premium is paid before my effective date and during my lifetime. I understand that if I fail to give true and complete answers on this application, benefits may be denied during the first 2 Certificate Years. By accepting my Certificate, I approve any change noted in the "Additions or Amendments" section of this application.

       *  *  *  *

    X s/ S Martez Ford                    5-25-03
    Your Signature                          Date

(Petition, Exhibit A). Mr. Ford died on April 10, 2004, approximately nine and one half months after applying for coverage through Union Labor Life, and plaintiff subsequently instituted a claim for benefits under that coverage. Mr. Ford's autopsy report dated April 12, 2004, contained the following information:

    **PATHOLOGIC DIAGNOSES**
        I.      Atherosclerotic cardiovascular disease.

           *  *  *  *

    CAUSE OF DEATH: Atherosclerotic cardiovascular disease

> MANNER: Natural
> **CIRCUMSTANCES OF DEATH**
> This 43 year old Black male reportedly had a past history of drug abuse and traumatic head injury 6-8 months ago. He had been receiving vestibular therapy and retraining following the fall from a ladder. He had been complaining of indigestion for two days prior to his death for which he had consumed Tums. He was with his son at 0600 hours and at 0800 hours he was found apneic and pulseless on his bed and was transported to the emergency room where he was pronounced dead.

(Catherine Burke Aff. ULL032). Following Mr. Ford's death, defendant Union Labor Life obtained authorization from plaintiff, the beneficiary under his coverage, to procure copies of his medical records. Defendant procured copies of Mr. Ford's autopsy report, records of Mr. Ford's December 29, 1999 visit to Via Christi Regional Medical Center, and Mr. Ford's "History and Physical" record at Via Christi Regional Medical Center.

On December 29, 1999, Mr. Ford was taken to Via Christi Regional Medical Center by Sedgwick County EMS. The EMS record contained the following history:

> 39 Y/O B/M Pt was reported by his wife to have experienced a decreased LOC and to be "shaking" w/ his right hand. Wife States Pt went outside to move Hi[s] truck and was found slumped over the wheel w/ the truck running and in gea[r.] Pt was assisted to the house and sat on living room couch. Wife reports P has long Hx of cocaine abuse. Pt states he "smoked" app. $100 of crack around 0700 this morning. Pt states drug use has never made him feel like this. Pt c/o tenderness to his right side. Pt denies chest pain or headache.

(Burke Aff. ULL047). However, plaintiff does not recall ever describing or otherwise stating to anyone that her husband had a history of cocaine abuse.

During Mr. Ford's hospital stay on and after December 29, 1999, he was found to have some paralysis on his right side and an aneurysm was suspected. When he was discharged, a program of physical therapy was prescribed and administered. His hospital records indicate SHx [Social History] "cocaine use app 1 per month." (Burke Aff. ULL048). Additionally, a

4

document titled "Coding Summary" indicated:

> Principal Dx:
> 968.5    COCAINE INGESTION
>
> Secondary Dx:
> 305.60    COCAINE ABUSE-UNSPEC
> 342.90    HEMIPARESIS [ULL175.]

(Burke Aff. ULL048-50,175).

Following Mr. Ford's discharge from Via Christi Regional Medical Center in late December 1999, he returned for several episodes of physical therapy in connection with the sensory loss or partial paralysis on his right side. The following statements are contained in the medical records from that treatment (as well as can be reconstructed from the handwriting and photocopies):

> Please describe any surgeries, hospitalizations or injuries you have and date of injury/surgery
>
> | **Date** | **Surgery/Hospitalization/Injury** | **Reason** |
> | --- | --- | --- |
> | 12/27/99 | ST. francis [sic] | Blood vessel in head burst [indecipherable] right side |
>
> **I certify to the best of my knowledge that the above answers are complete and correct.**
>
> 1/6/00                                              S Martez Ford

[Burke Aff. ULL167-68.]

> *   *   *   *
> EVALUATION DATE: 1-6-00
> DIAGNOSIS: R sided paralysis
> Pt is a 39 yom & above dx. On 12-27-99 pt experienced loss of consciousness & R sided paralysis. Pt states it was a probable aneurysm.

5

[Burke Aff. ULL157.]

\* \* \* \*

Date 2/7/00          Pt/family comments: States he went to the Dr and is
                     not on 2 new medications to try and control his B/P.
                     c/o headache

Treatment Provided/Functional Progress: Resting   B/P taken in R arm at
162/100.  Pts Dr was notified and Pt was sent home.  Will place him on hold
until his new medication has a chance to work (a 7 days)  [Burke Aff. ULL161.]

(Burke Aff. ULL157, 161).

During another admission to Via Christi Regional Medical Center on April 14, 2002, Mr. Ford complained of sharp pain to the left chest in connection with cough/cold symptoms. His Social History again noted "Cocaine" (Burke Aff. ULL057) and the treating physician, Dr. McMaster, noted a Clinical Impression of "Substance abuse" (Burke Aff. ULL058).  Dr. McMaster caused an instructional letter/memorandum to be given to Mr. Ford, which stated in pertinent part:

> **Nonspecific Chest Pain**
> A specific reason for your chest pain has not been found, but it does not
> appear to be related to any serious heart or lung disease.  It may be from
> emotional stress, a viral inflammation in the chest wall, minor injury, or a
> stomach acid problem.
>
> \* \* \* \*
>
> **Drug Abuse**
> Your evaluation indicates a problem with drug abuse.  It is a terrible health
> problem for the user.  Life-threatening diseases such as AIDS and hepatitis
> are common with IV drug users.  Sudden death is a problem with the use
> of cocaine and heroin.  Many other persons harm themselves or others
> while under the influence of the drug.
>
> As great as the effects of drugs on your body is often the damaging effect
> on those around you.  People who care for you or who you have

>
> responsibilities for are greatly damaged by your drug abuse.  Even if you feel that you are not a heavy user, there is a good chance of affecting your future in a harmful way.
>
> Treatment for drug abuse is available for those who are ready to receive help.  There are inpatient and outpatient programs available to help if you can admit you need help and are tired of throwing your life away.  We will be glad to assist you in getting started with the help that can save your life and your family.
>
> **The following note(s) should be read carefully:**
>
> \*   \*   \*   \*
>
> I understand that the treatment I have received was given on an emergency basis only.  I understand that further treatment may be necessary.  I have been given a copy of the above instructions.  I understand these instructions and I will arrange for follow-up care as outlined above.
>
> \*   \*   \*   \*
>
> Signed:_____s/ S Martez Ford_____

(Burke Aff. ULL053-54). However, plaintiff claims that neither she nor Mr. Ford were aware of any clinical impression or notation from Dr. McMaster of "substance abuse."

The "History and Physical" record at Via Christi Regional Medical Center prepared after Mr. Ford's death contains the following information:

> PAST MEDICAL HISTORY
> Significant for previous substance abuse.  The patient has used cocaine in the past.  It is unclear whether the patient has had any recent substance abuse, although they think not.  Otherwise, past medical history is negative.

(Burke Aff. ULL102).  Had Mr. Ford communicated the actual facts of his substance abuse and other medical history to defendant, his application for term life coverage would have been rejected in view of the substantially increased risk which they evidenced.

**III. ANALYSIS**

Defendant's motion raises the central issue of whether Mr. Ford made material misrepresentations in his application for insurance coverage. Specifically, defendant claims that Mr. Ford misrepresented whether he was diagnosed for drug addiction and whether he had other illness, injury or abnormal physical condition.

In support of its motion, defendant argues that the preemptive principles under ERISA require that the federal statute rather than state law controls. Yet, defendant cites *Ellis v. Great-West Life Assurance Co.*, 43 F.3d 382 (8th Cir. 1994), which applies state law to a beneficiaries' life insurance claim. In *Ellis*, a district court had granted summary judgment to a beneficiary. *Id.* at 385. However, the appellate court reversed, finding that the insured had made wilfully false and intentionally misleading statements on the application for life insurance in violation of state law. *Id.* at 387-88. Thus, the insurer could void the life insurance contract. *Id.* at 388.

In response, plaintiff argues *Ellis* is distinguishable because the insured had withheld information when asked specific questions about his wife's health, even though he was aware of his wife's medical history, treatment and diagnosis for various conditions. Instead, plaintiff urges this court to apply *Waxse v. Reserve Life Ins. Co.*, 248 Kan. 582 (1991). Using the standard for fraudulent misrepresentation, the court found that an insured's failure to disclose information about a positive HIV blood test was not sufficient to rescind a contract for insurance. *Id.* at 586. The court found that the insured had answered the questionnaire honestly since there had been no inquiries as to AIDS or HIV. *Id.* at 587. Although the insured could have disclosed his condition, he did not have to since there was a lack of symptoms or impairments. *Id.*

8

While *Waxse* and *Ellis* provided some framework for interpreting insurance applications, in this instance the medical records provide a basis for denying coverage. Despite plaintiff's claim that she had no knowledge that her husband was diagnosed with drug abuse, Dr. McMaster's notation demonstrates that at least Mr. Ford was aware of a drug abuse problem. The court does not find that Mr. Ford had to disclose his use of drugs because the insurance questionnaire did not ask such a question. However, Mr. Ford had to disclose whether he had been diagnosed with a drug abuse problem. Mr. Ford clearly signed the document referencing a diagnosis of a substance abuse problem. Furthermore, Mr. Ford did not disclose other medical conditions for which he had been seeking care. When seeking coverage, Mr. Ford did not disclose that he had been treated for nervous or circulatory disorders in the past seven years and that he had been examined for other abnormal physical conditions in the past three years. Mr. Ford's material misrepresentations now prevent coverage under the policy. While insureds may at times inadvertently omit some information, here Mr. Ford misrepresented significant aspects of his medical history. The medical record identified Mr. Ford's diagnosis for drug abuse. His hospitalization and medical treatment were significant events that should have been disclosed on defendant's questionnaire.

IT IS ACCORDINGLY ORDERED this 27th day of June 2006, that the court grants defendant's Motion for Summary Judgment (Dkt. No. 13).

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE